# WINDHAM COUNTY.

## FEBRUARY TERM, 1837.

PRESENT, HON. CHARLES K. WILLIAMS, *Chief Justice.*
" STEPHEN ROYCE, } *Assistant Justices.*
" JACOB COLLAMER. }

SAMUEL ALLEN, Jr. *v.* JOHN P. WARREN.

Windham.
*February,*
1837.

An execution, issued by a justice of the peace, upon a judgment, in which the debt or damages do not exceed the sum of fifty three dollars, should be made returnable in sixty days, though the damages and costs, together, exceed that sum.

This was an *audita querela,* on the following complaint.

" John P. Warren is attached to answer unto the grievous complaint of Samuel Allen, jr. who complains and says, that, heretofore, on the 4th day of March, 1836, the said John P. Warren, by the consideration of Pearley Fairbank, justice of the peace for Windham county, recovered judgment, in an action on judgment, demanding sixty dollars damages, against the complainant, for the sum of fifty dollars and ten cents, damages, and three dollars and thirty seven cents; costs of suit in that behalf— as by the record of said judgment, ready to be produced in court, will fully and at large appear. And the complainant further says, that, afterwards, on the same 4th day of March, the said John P. Warren prayed out his writ of execution of said judgment, for the sums aforesaid, dated the 4th day of March, 1836, and returnable within sixty days from the date thereof, the tenor of which writ here follows, to wit—[here follows the execu-

tion in all respects regular, except that it is returnable in sixty days.] And the complainant further says, that, afterwards, on the 5th day of March, 1836, the said John P. Warren, at Wardsboro, put the said writ into the hands of one Chandler Pratt, then a lawful deputy sheriff of Windham county, and procured the said Pratt, under color of said writ, to seize the goods and cattle of the complainant, to wit, one two-year-old colt, of the value of forty dollars, and the same convert and dispose of to the proper use of said John P. Warren, under pretence of satisfying said writ. And the complainant further says, that said writ is irregular, null and void, in this, that the same is returnable within sixty days, and not within one hundred and twenty days from the date thereof, and the said writ, for such cause, ought to be set aside vacated and holden for nought ;—and the complainant has had no day in court to plead the matter aforesaid, in avoidance of the said writ. By all which the complainant is greatly aggrieved," &c.

To this complaint the defendant demurred.

Complainant joined in demurrer.

The County Court decided that the complaint was insufficient. To this decision the complainant excepted ; and the cause passed to the Supreme Court.

*R. M. Field, for the plaintiff.*

I. Audita querela is the proper remedy, where an irregular execution has issued on a regular judgment.

" *Sci. fa.* recited a judgment in the time of the King, which, in truth, was in the time of the King and Queen, and so no judgment to support it. *Per Cur.* In strictness, we ought to put them to *Aud. que.* but we generally relieve on motion." 12 Mod. Rep. 355. 10 Vin. Abr. 588.

" If an execution issue irregularly on a regular judgment, and award of execution, the remedy for the party injured is, either by *audita querela,* or by motion to the court to set aside." 12 Mass. Rep. 483.

The last case was cited and approved by this court in *Hurlbut* v. *Mayo,* 1 D. Chip. Rep. 391.

*Audita querela* is necessarily the only remedy against an irregular execution of a justice of the peace for as justice courts are constituted, without stated terms or succession, relief by motion is impracticable.

II. A mistake in the return of an execution is an irregularity sufficient to avoid it.

In *Hatch, ex parte*, 2 Aik. 28, it was decided, that an execution ,made returnable in one hundred and twenty days, which should have been returnable in sixty days, was bad, and would not justify an arrest.

In *Tichout* v. *Cilley*, 2 Vt. Rep. 415, this court held that an execution, made returnable, by mistake, in sixty days, instead of one hundred and twenty, was voidable. Learned counsel, on both sides, considered it wholly void.

III. The execution of the judgment, set forth in the complaint, should have been made returnable in one hundred and twenty days.

The act of 1825, Sec. 3, provides that, " whenever a judgment shall be rendered for a larger sum than fifty-three dollars, in pursuance of the provisions: of this act, the execution shall be made returnable in one hundred and twenty days." Stat. p. 139.

Two propositions are to be sustained by the complainant.

1. That the *judgment* was for more than fifty-three dollars.

2. That the judgment was rendered in pursuance of the provisions of the act of 1825.

1. The complainant insists that a judgment includes costs, as well as damages. The defendant, on the contrary contends, and so the County Court decided, that debt or damages alone constitute the judgment.

At common law, costs, *eo nomine*, were not recoverable, but they might be, and usually were, given by the jury, in the assessment of the damages. 3 Black. Comm. 399.

By the statute of Gloucester and other English statutes, costs were expressly given, to be recovered with the damages. Id. Ibid.

The practice of separating damages and costs was adopted, simply to avoid giving the plaintiff his costs of suit twice over, once by the assessment of the jury, and once by the taxation of the court. In their real nature, however, costs have always been considered as a part of the damages.

In the record, they are mentioned as increase of *damages*.

" Costs are, in law, so coupled together, that they are accounted parcel of the damages." 2 Inst. 288.

In *Pilfold's case*, 10. Co. 116, the word *damna* is said to in-

clude costs under its proper and general signification; thus, there are "*damna pro injuria illata et pro expensis litis.*"

In *Phillips* v. *Bacon*, 9 East. 304, Lord Ellenborough said, "costs are a consequence, by the statute of Gloucester, of detaining the debt, and are a part of the damages. In contemplation of law, the word *damages* emphatically includes *costs*."

See also, 1 Lutw. 640. Cro. Jac. 420. 2 Wils. Rep. 95.

"There can not be one judgment for debt and another for costs." Roll's Abr. 516.

In *Graham* v. *Benton*, 1 Wils. 41, it was decided, that the costs of a writ of error, accruing after a certificate of bankruptcy, when the judgment was before, were barred by the certificate. The reason given is, that "the costs and debt are one debt."

See also, 1 H. Black. Rep. 29. 1 W. Black. Rep. 1317. 3 M. & S. 326.

In *Weed* v. *Nutting*, Brayt. Rep. 28, it was held that a judgment, in which illegal costs were allowed, was irregular *in toto*. This decision stands on the good legal reason, that the debt and costs form one *entire* judgment.

The English statutes treat costs as forming a part of the judgment. Thus, the Stat. 23 H. 8 Cap. 13. 4 Jac. 1 Cap. 3. 8 & 9 W. 3 Cap. 10, provide, that, in certain cases, the party shall have "*judgment* to recover his *costs*." The Stat. 22 & 23. Car. 2 Cap. 9, enacts, that, if too large costs, in a certain case, be given, the "judgment shall be void." The Stat. 3 Jac. 1 Cap. 8 provides, that, in error, "bail shall be given to satisfy the debt, damages and *costs, adjudged* on the former *judgment*."

Our own statutes uniformly use the word, *judgment*, to include costs, as well as damages.

At p. 216, interest is given on "*judgments*," after sixty days. 'Twas never doubted that interest should be computed on costs, as well as damages.

At p. 135, jurisdiction is given to justices, in actions on "judgments," not amounting to more than fifty-three dollars; and on "foreign judgments," not surmounting thirty-three dollars. Was it ever questioned that costs here must be taken into the account in determining the jurisdiction?

At p. 145, appellant may tender the "whole amount of the *judgment*," and plead in bar. Would it be sufficient to tender the debt or damages only?

·At p. 86, Sec. 94 and p. 126, Sec. 13, " mutual *judgments*" may be offset, and execution issue for the balance. What becomes of the costs, if nothing, but mutual damages, are offset?

At p. 61, interest on the *judgment* is given, in case of failure to prosecute a writ of error commenced. Hence, it appears, that the Legislature was not ignorant of the distinction between judgment and debt.

See also, pp. 87, Sec. 96. 151, 3 times. 72, Sec. 46. 73, Sec. 52. 66, Sec. 29.

The act of 1821 contains, within itself, evidence of the sense, in which the Legislature intended to use the term " *judgment*."

In the second proviso of Sec. 1, it became necessary to speak of debt or damages, as distinguished from costs. If the defendant's definition be correct, why was not the word *judgment* used in that proviso, instead of the periphrasis, " sum in debt or damages ?"

Again, in Sec. 6, the word judgment recurs, and in a connexion, not admitting of any cavil about its signification. A defendant, appealing, is allowed to tender a confession for the "amount of said judgment." It will not be denied, that judgment, here, includes costs as well as damages. Is it not decent to presume that in the same act, (and that short and carefully penned,) the Legislature intended the *same* thing by the *same* word ?

The inference is, that the costs must be reckoned with the damages, in ascertaining the amount of the judgment.

And this is reasonable and consonant to the true spirit of the act, for the design of this third Section was to favor debtors in large executions. But it is indifferent to the debtor, whether the money, to be paid, is to satisfy costs or damages.

2. The judgment was rendered in pursuance of the provisions of the act of 1825.

The complaint shows, that the damages, demanded in the action, were *sixty dollars*. A justice of the peace, by no other act, could take cognizance of such an action, or render any judgment, at all, therein. For the *ad damnum*, though not conclusive to confer jurisdiction, is conclusive to take it away. See 1 Aik. Rep. 250. 5 Vt. Rep. 124. Id. 503.

It is no answer to say, that the amount of the judgment was not beyond what a justice *might* have rendered by the act of

1811 ; for the amount, actually recovered, is never considered in determining the jurisdiction. *Brush et al.* v. *Torrey*, Bray. Rep. 141.

*D. Kellogg, for defendant.*

I. As the *debt* or *matter* in demand, in the suit *Warren* v. *Allen*, did not exceed fifty-three dollars, the execution was properly made returnable in sixty days. Statute of 1811, p. 137. Statute of 1803, p. 135.

II. The justice had jurisdiction of the suit, by virtue of the the act of 1811, and did not need the aid of the act of 1821. The judgment was not rendered in pursuance of the provisions of the act of 1821.

III. The provision of the act of 1821, requiring executions, in certain cases, to be made returnable in one hundred and twenty days, applies only to that class of cases, falling within the enlarged jurisdiction, as created by the act, or, in other words, where the *debt* or *matter* in demand exceeds fifty-three dollars.

The jurisdiction of the justice is determined by the amount of the plaintiff's demand, without reference to the costs accruing in the progress of the suit.

IV. This view is conformable to the language and spirit of the statutes, and is believed to correspond with the uniform practice throughout the State.

The opinion of the court was delivered by

COLLAMER, J.—The statute of 1821, ( Com. laws, p. 139 ) increased the jurisdiction of justices of the peace from fifty-three dollars to one hundred. This was considered a relief to debtors, in saving them cost. But as they had been previously subject to suit, on demands above fifty-three dollars, to the County Court, whose sessions were only twice in each year, and they could procure delay by reviewing their causes to the next term, when they came to be sued on such demands before a justice of the peace, they would be subject to execution, without delay. To relieve them, in some measure, from this increased dispatch, it was devised to have executions with a longer life. It was then, for the first time, that an execution for one hundred and twenty days was provided for. From this view, the mind is naturally led to expect, that the new execution would be provided only for the cases, that were now newly included in the justice jurisdiction ; granting this delay to those who had delay,

Windham,
February,
1837.

Allen
o.
Warren.

in another way, before.   In the third section, it is provided, "that whenever a judgment shall be rendered for a larger sum "than fifty-three dollars, *in pursuance of the provisions of this* "*act*, the execution shall be made returnable within one hun- "dred and twenty days ; any former act to the contrary not- "withstanding."   The *judgment*, then, must not only exceed fifty-three dollars, but it must have been rendered *pursuant to the provisions* of this act, increasing the jurisdiction above fifty-three dollars.   The judgment, in this case, including costs, was over fifty-three dollars, but the *debt* or *damages* was under that sum.   It was a judgment rendered in an action on judgment. Was it in pursuance of this act, or was the judgment such a one, as the justice might have rendered, without this act ?   We think he might have rendered such a *judgment,* without this act, and, therefore, the execution might issue for sixty days.   But a further examination of this statute seems more clearly to settle this question.   By the previous laws, where the body was taken on *mesne process*, and bail procured, in order to hold the bail, execution must be given out in thirty days, and delivered to the proper officer, and a return of *non est inventus* made, within sixty days from the judgment.   To leave this law in force, would, in a great measure, frustrate the delay, intended by the one hundred and twenty day executions.   In making provision for this, it became again necessary to speak of, and more distinctly define, in what cases such executions should issue, how they should be executed, and the effect on bail.   All this is done in the fourth section.   The last sentence, in that section, is as follows :  "and no bail shall be discharged, because a *non est inventus* return is made in sixty days, in any case, where final judgment is rendered by a justice of the peace, and where the judgment shall exceed the sum of fifty-three dollars, *in debt or damages.*"   This renders it perfectly certain, that it was in those cases only, where the *debt or damages, recovered,* exceed fifty-three dollars, was the execution to run one hundred and twenty days.

Judgment Affirmed.